UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL CENTER,<br><br>Defendant | Criminal No. 19cr10016<br><br>Violations:<br><br>Count One: Conspiracy to Commit Mail Fraud and Honest Services Mail Fraud (18 U.S.C. § 1349)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1.     The defendant, MICHAEL CENTER, was a resident of Austin, Texas. CENTER was employed as the tennis coach at the University of Texas at Austin ("U-Texas"). As an employee of U-Texas, CENTER owed a duty of honest services to the university.

2.     U-Texas is a highly selective public university located in Austin, Texas. The U-Texas men's tennis team competes at the Division I level, the highest level of intercollegiate athletics sanctioned by the National Collegiate Athletic Association ("NCAA"), and is consistently ranked as one of the top tennis teams in the nation. U-Texas recruits student athletes, who are admitted to the university through an admissions process that is separate from the process for other applicants. The admissions prospects of recruited athletes are significantly higher than those of non-recruited athletes with similar grades and test scores, particularly applicants who do not live in Texas.

3. William "Rick" Singer was a resident, variously, of Sacramento and Newport Beach, California. Singer owned the Edge College & Career Network, LLC, also known as "The Key," a for-profit college counseling and preparation business that he founded in or about 2007 and incorporated in the State of California in or about 2012. Singer also served as chief executive officer of the Key Worldwide Foundation ("KWF"), a non-profit corporation that he established as a purported charity in or about 2012. KWF maintained several bank accounts (collectively, the "KWF charitable accounts").

4. Martin Fox was a resident of Houston, Texas.

5. Applicant 1 was a high school student who resided in California and applied to attend U-Texas. Applicant 1 did not play competitive tennis.

## The Conspiracy

6. Beginning in or about 2014, CENTER agreed with Fox, Singer and others known and unknown to the United States Attorney to accept bribes in exchange for designating Applicant 1 as a tennis recruit, thereby facilitating Applicant 1's admission to U-Texas, in violation of the duty of honest services CENTER owed to U-Texas as his employer.

## Purposes and Objects of the Conspiracy

7. The principal purposes and objects of the conspiracy included the following:

    a. to facilitate the admission of Applicant 1 to U-Texas as a recruited tennis player, without regard for his athletic ability; and

    b. to enrich CENTER, Fox and Singer personally.

## Manner and Means of the Conspiracy

8.  Among the manner and means by which CENTER, Fox, Singer and others known and unknown to the United States Attorney carried out the conspiracy were the following:

   a.  designating Applicant 1 as a purported recruit for the U-Texas tennis team in exchange for bribes, despite the fact that Applicant 1 did not play competitive tennis;

   b.  concealing the nature and source of the bribes by funneling payments through the KWF charitable accounts.

## Acts in Furtherance of the Conspiracy

9.  On various dates between approximately November 2014 and September 2015, CENTER, Fox, Singer and others known and unknown to the United States Attorney committed and caused to be committed the following acts, among others, in furtherance of the conspiracy:

10. On or about November 23, 2014, Singer, who was located in California, e-mailed Applicant 1's high school transcript and application essays to Fox in Houston, Texas.

11. On or about November 25, 2014, Fox forwarded the e-mail to CENTER. CENTER replied, "Got it."

12. Later that same day, CENTER e-mailed Fox again, noting, "I read his application and researched his high school . . . . Looks like he goes to very high end school." CENTER directed Fox to call him "after [T]hanksgiving" so they could "discuss."

13. On or about December 11, 2014, CENTER e-mailed Applicant 1's application materials to an administrator in the U-Texas athletics department so that Applicant 1 would be coded as a student-athlete.

14. On or about February 27, 2015, Applicant 1's father made a purported donation of stock valued at $455,194 to KWF.

15. On or about March 2, 2015, CENTER e-mailed Applicant 1's father and notified him that U-Texas would be sending Applicant 1 a letter of intent for a "books" scholarship, pursuant to which the university pays for an athlete's books, as part of the recruitment process.

16. In a letter dated April 13, 2015, U-Texas awarded Applicant 1 the books scholarship.

17. On or about April 15, 2015, Applicant 1 and his father returned via e-mail from California a signed "letter of intent" to play tennis for U-Texas.

18. At CENTER's instructions, Applicant 1 was added to the U-Texas tennis team roster as a recruited athlete.

19. On or about April 20, 2015, Applicant 1 was admitted to U-Texas.

20. On or about April 22, 2015, an employee of Singer, acting at Singer's direction, purchased a cashier's check for $25,000, payable to "Texas Athletics," using KWF funds.

21. On or about April 30, 2015, Applicant 1's father made a second purported donation of stock to KWF, this time with a value of $102,925.

22. On or about May 12, 2015, Applicant 1's father made a third purported donation of stock to KWF, with a value of $73,445.

23. On or about June 5, 2015, KWF mailed CENTER a $15,000 check, payable to "Texas Athletics Attn: Michael Center."

24. On or about June 8, 2015, Singer's employee, acting at Singer's direction, mailed Fox a check for $100,000, drawn on one of the KWF charitable accounts, for his role in brokering a bribe of CENTER.

25. On or about June 22, 2015, Singer flew to Austin, Texas. There, Singer met with CENTER and provided CENTER with approximately $60,000 in cash.

26. CENTER did not disclose the cash payment he received from Singer to U-Texas.

27. On or about September 4, 2015, Applicant 1 withdrew from the tennis team and renounced his "books" scholarship.

## COUNT ONE
### Conspiracy to Commit Wire Fraud and Honest Services Wire Fraud
### (18 U.S.C. § 1349)

The United States Attorney charges:

28. The United States Attorney re-alleges and incorporates by reference paragraphs 1-27 of this Information.

29. From in or about November 2014 through in or about September 2015, in the Western District of Texas and elsewhere, the defendant,

### MICHAEL CENTER,

conspired with William "Rick" Singer, Martin Fox, and others known and unknown to the United States Attorney to commit wire fraud and honest services wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property, to wit, admission to the University of Texas at Austin, by means of materially false and fraudulent pretenses, representations and promises, and to deprive CENTER's employer, the University of Texas at Austin, of its right to his honest and faithful services through bribes and kickbacks, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges that:

30. Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1343, 1346 and 1349, set forth in Count 1 of this Information, the defendant,

**MICHAEL CENTER,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following assets:

    a. $60,000, to be entered in the form of a forfeiture money judgment.

31. If any of the property described in Paragraph 30, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 30 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

By:

ANDREW E. LELLING
United States Attorney

ERIC S. ROSEN
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
Assistant U.S. Attorneys

Date: April 8, 2019